Filed 2/3/22  P. v. Alatorre CA4/3

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>       v.<br><br>EDGAR FERNANDO ALATORRE<br><br>   Defendant and Appellant. | G059547<br><br>(Super. Ct. No. 20NF0719)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

The opinion filed on January 11, 2022, is hereby ordered modified as follows:

On page 22, the Disposition is deleted, and a new Disposition is added that reads:

"DISPOSITION

Appellant's sentence is reversed, and the matter is remanded to the trial court with directions to resentence appellant to a term no greater than his original sentence.

Relevant to that resentencing, Senate Bill No. 567 (2021-2022 Reg. Sess.) made the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist (see Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2)), and limited a trial court's ability to impose an aggravated term of imprisonment absent the existence of specified conditions.  (§ 1170, subd. (b)(1)-(3), as amended by Stats. 2021, ch. 731, § 1.3.)  Because resentencing here will occur after the effective date of the amendments

1

to section 1170 made by Senate Bill No. 567, and because the trial court originally sentenced appellant to aggravated terms on the assault charge and the firearm enhancement, in exercising its resentencing discretion the trial court shall apply section 1170 as it reads effective January 1, 2022. (See *In re Estrada* (1965) 63 Cal.2d 740; cf. *People v. Lopez* (2019) 42 Cal.App.5th 337, 342 [amendments to § 667.5, subd. (b) enhancements apply retroactively].) We express no opinion how that discretion should be exercised.

Following resentencing, the court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed."

Appellant's petition for rehearing is DENIED. This modification does not effect a change the judgment.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

ZELON, J.*

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059547 |
| v. | (Super. Ct. No. 20NF0719) |
| EDGAR FERNANDO ALATORRE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed in part, reversed in part and remanded for resentencing.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted appellant Edgar Fernando Alatorre of offenses arising from two incidents tried together. In the first, appellant was convicted of assault with a firearm (Pen. Code, § 245, [1] subd. (b) (count 2)), with a true finding he personally used the firearm (§12022.5, subd. (a)). In the second, he was convicted of possession of methamphetamine while in possession of a loaded, operable firearm (Health & Saf. Code, § 11370.1, subd. (a) (count 3)), possession of methamphetamine for purposes of sale (Health & Saf. Code, § 11378 (count 5)) with a true finding on a weight enhancement allegation (§ 1203.073, subd. (b)(2)), and being a previously convicted felon in possession of a firearm (§ 29800, subd. (a)(1) (count 6)). [2]

The trial court sentenced him to a term of 20 years 8 months, comprising an upper term of 9 years on the assault charge with a consecutive 10-year upper term for the gun use enhancement, a 1-year consecutive term for possession of methamphetamine while armed, and a consecutive 8 months for being a felon in possession of a firearm. A 3-year concurrent term was imposed for possession of methamphetamine for sale, and was stayed pursuant to section 654.

Appellant contends his conviction for possession of methamphetamine for sale must be reversed because there was insufficient evidence to support the jury's verdict. As for his sentence, he claims the trial court failed to adequately articulate its reasons for imposing upper terms for the assault and firearm-use enhancement as well as for the consecutive sentences for possession of methamphetamine with a firearm and being a felon in possession of a firearm. Lastly, appellant contends the sentence for being a felon in possession of a firearm should have been stayed pursuant to section 654.

We reject appellant's sufficiency of the evidence claim as to the possession for sale conviction. Regarding his sentence, we find appellant forfeited his challenges to

---

[1]        All further statutory references are to the Penal Code unless otherwise indicated.

[2]        The jury acquitted appellant of attempted murder (§§ 664, subd. (a)/187, subd. (a) (count 1)). It was unable to reach a verdict on a separate charge of possession of heroin for sale (Health & Saf. Code, § 11351 (count 4)), which the trial court dismissed at the sentencing hearing.

the upper term sentences and the consecutive sentence imposed for possessing methamphetamine while armed. Forfeiture notwithstanding, we further conclude appellant fails to show the trial court inadequately provided its reasons for those discretionary sentencing choices.

As for the section 654 claim, the eight-month consecutive sentence imposed for being a felon in possession of a firearm must be reversed. And because the trial court retains discretion to restructure the entire sentence in light of that reversal, the matter must be remanded for resentencing.

FACTS

Because defendant raises a sufficiency of the evidence claim, we lay out the underlying facts in some detail, doing so in the light most favorable to the jury's verdicts. (*People v. Abilez* (2007) 41 Cal.4th 472, 504.) Additional facts relevant to the other issues appellant raises are found in the discussion section, *post*.

Kelsey S. had an on-again, off-again relationship with Mia R. Mia had also had a brief relationship with appellant, but that had ended in 2019. During an off-month, Mia frequented an Anaheim "drug house" where her friend Erica S. and several others lived, including appellant. [3] Inside the house, people used and sold drugs, and Mia referred to it as a "house full of dope fiends." Appellant's then-girlfriend, Falon M., said it was not a safe place to live because the front door was never locked, "there's always strange people in and out, [and] there's people on drugs."

On March 7, 2020, Mia and Kelsey came by the house to retrieve a television Mia had lent appellant. Erica answered the door and let them inside. Appellant had made a "makeshift bedroom" in the living room with sheets and curtains. Mia asked for appellant, and Erica told her he was sleeping. Mia then heard appellant

---

[3] Mia thought five or six people lived in the house. When police executed a search warrant, nine or ten people were removed from the house, not including appellant, who was not present. Appellant's girlfriend Falon M. said "over ten" people lived at the house.

wake up and asked him for her television. He responded, "What TV? It's mine." Mia said, "Just give me my TV." "We're just trying to get my things and leave." Appellant said, "Fuck you," and threw a portable vacuum at the television, breaking it.

After hearing the crash, Mia and Kelsey entered appellant's makeshift bedroom. The situation escalated and all three began arguing. Mia asked appellant why he broke the TV, and his response was, "Fuck your TV." The two traded insults, and Kelsey also got involved in the argument.

Appellant asked Mia, "And why the fuck did you bring this – this lesbian here?" referring to Kelsey. Kelsey called appellant a "bitch," and appellant stood up, grabbed a gun from beneath his bed, turned around, and struck Kelsey on the side of her head with the gun. When he did so, the gun discharged. The bullet grazed the right side of Kelsey's head, just above her ear.

Kelsey said, "Let's go," and walked out the front door; Mia stayed behind. Kelsey realized she had been shot as she felt blood dripping down her neck. She returned to the house, but Erica stopped her, pushing her back and saying, "You need to go. He's going to kill you." Mia came running out and they went to the hospital, where Kelsey was stitched up.

On March 11, Anaheim police executed a search warrant at the house, although appellant was not present. Hidden in appellant's bed was a 9-millimeter semiautomatic handgun. It was loaded, although there was no round in the chamber at that time. The parties stipulated that the pistol was equipped with two safeties and when test-fired it operated without malfunction, the trigger-pull weight was five and a half pounds, and when it was "impact tested" the cocked striker did not "release without direct trigger pressure." They further stipulated that in March 2020 appellant had been convicted of a felony.

Also in appellant's bedroom was a black metal box containing four baggies of methamphetamine: three bags weighed 29 grams each, and a fourth weighed 58 grams.

4

In addition, there was a bag containing three smaller bags of heroin, totaling 6.9 grams. Also seized was a small digital scale designed for weighing gram amounts, consistent with scales seen during narcotics investigations. Inside a nightstand was a pay stub dated December 2019 with appellant's name on it. Elsewhere in the house, police found a bag containing more than 70 rounds of 9-millimeter ammunition. Finally, police found a bullet hole in the drywall and a bullet in the closet behind it.

When appellant and Falon M. were later arrested, she told police she used heroin and marijuana daily, and admitted she was under the influence of heroin when she spoke with the officers that day. She said appellant was not a heavy drug user, however, and he did not use daily, or even every other day.

Anaheim police sergeant Jonathan McClintock testified as an expert on drugs and drug sales. He explained he always assessed the totality of the circumstances in each case to render an opinion whether the drugs were for sale or personal use. He started by stating it is common for someone who uses drugs to also sell them. The presence of similarly weighed quantities is also often indicative of an intent to sell. It was noteworthy here that there were four separate quantities of methamphetamine, and in premeasured amounts: three weighing approximately one ounce each, and the fourth weighing two ounces. The total 145 gram weight was a significant quantity of methamphetamine in his opinion. The scale was also important to him because it could be used to measure out gram quantities for the purpose of distribution.

McClintock said that, in general, the quantity of a drug is a significant indicator of sales when it is well above the amount that would be held for personal use. The average user would normally possess a gram or so for their personal use each day. The amount of methamphetamine one uses daily depends on a number of factors, including tolerance, but it may range anywhere from 0.03 grams to several grams a day.

Moreover, because illicit drugs are expensive and dangerous, simple users do not commonly carry around thousands of dollars' worth of drugs when they could be

robbed or arrested. Similarly, because robbery is not uncommon, individuals selling drugs often have a gun available.

McClintock estimated the average price for methamphetamine in March 2020 was between $20 and $40 per gram and the methamphetamine appellant possessed had a street value between $1,000 and $6,000, depending on how it was sold. The average price for heroin at that time was between $70 to $90 a gram, and appellant's stash had a street value between $400 and $600. He considered a usable quantity of the two drugs to be between 0.03 and 0.05 grams. Therefore, he estimated appellant possessed 3,000 to 4,000 doses of methamphetamine, and more than 100 doses of heroin. He had never heard of anyone possessing that much methamphetamine merely for personal use.

It was McClintock's expert opinion the methamphetamine was possessed with the intent to sell based on the quantity possessed, and the gram scale. He also thought the heroin was possessed for sale because it was proportioned in smaller predetermined baggies, and also accompanied by a scale. However, he said the amount of heroin alone in this case would not necessarily indicate possession for sale.

Appellant testified in his own defense. He said he moved into the house in July 2019 because he had nowhere else to go, and his brother lived there. It was "a wild place," with people coming and going at all hours, no rules. Everyone was getting high, including appellant, who was getting high "all the time" on "meth and heroin."

Appellant said he met Mia R. in July 2019 at the house and had a relationship with her until she moved to Las Vegas. Mia told him she was in a relationship with a woman named Kelsey. He helped Mia move to Las Vegas and visited her there about four times. She had an extra television in storage and said he could have it. He told her she could have it back whenever she wanted it.

On March 7, 2020, appellant said he was sick and had taken medication that put him to sleep. Falon M. woke him up and said Mia was there. He heard Mia say,

6

"Wake up. Stop acting like you're asleep. Give me my fucking TV." Still in bed, appellant became upset, said, "Fuck your TV," grabbed a portable car vacuum and threw it at the television and broke it.

Appellant explained he sat up in his bed and Mia and Kelsey rushed into the room and knocked a steam cleaner into the wall. He grabbed a gun, because it just happened to be there – but not because it was common for him to sleep with a gun — and he swung the gun as the two came at him. The gun hit the right side of Kelsey's head and discharged. He insisted he did not intend for the gun to discharge and that he swung the gun to protect himself, and did not even aim it. Afterwards, he gave the gun to his brother, stating: "Take it. Get it out of here. It went off." He insisted he did not know who the other 70 rounds of ammunition belonged to and had never seen them before. He did not recall whether he had told Falon M. not to talk to the police.

Appellant admitted the methamphetamine and scale belonged to him. He said he had the scale to weigh his drugs to make sure he did not get ripped off when he purchased them. He could afford the drugs because he worked as a forklift supervisor in a warehouse, over 50 hours a week, making $18 per hour. The drugs were for personal use and were intended to last about a month. He claimed he was smoking about 7 grams of methamphetamine per day. He bought "watered down" methamphetamine because it was cheaper, and he could smoke it all day. It cost between $50 and $75 an ounce and he had purchased six ounces for $500 or $600, and had already smoked one ounce. He said the heroin was also his and he also smoked it daily. He explained he smoked methamphetamine to get high, and used between a half a gram to a gram of heroin to level himself off. He said he had paid $100 for the heroin. Appellant insisted he did not sell, distribute, or furnish drugs to anybody; they were only for his personal use.

Appellant said someone left the gun in his room a few days earlier, although he could not remember who it was. He had some knowledge of guns, but no

training. He admitted he knew the gun was loaded, but did not know whether there was a round in the chamber.

In rebuttal, the prosecution called Officer Catalin Panov, who had interviewed Falon M. when she and appellant were arrested. Falon told him appellant told her not to say anything to the police. In addition, Panov testified he had interacted with thousands of methamphetamine users over his 20 years in law enforcement, and had never had anyone tell him they used seven grams a day; the most a regular, heavy user said they used daily was a couple of grams. Notably, he added that it is common for street-level dealers to "extremely exaggerate" how much they personally use so police will not think they are possessing the drugs for the purposes of sale.

DISCUSSION

*Possession of Methamphetamine for Sale*

Appellant first contends his conviction for possessing of the methamphetamine for purposes of sale is not supported by substantial evidence. We are not persuaded.

*Standard of Review*

"In reviewing a sufficiency of the evidence claim, the reviewing court's role is a limited one." (*People v. Smith* (2005) 37 Cal.4th 733, 738.) "[W]e review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence – that is, evidence which is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Westerfield* (2019) 6 Cal.5th 632, 713; *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) We examine "'the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.' [Citation.]" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.) "'"Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury

8

to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends."' [Citation.]" (*Ibid.*)

"'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.) Thus, "[a] reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Simply put, appellant "bears an enormous burden" to prevail on a sufficiency of the evidence claim. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) Appellant has failed to carry that burden.

*Analysis*

McClintock, an experienced narcotics officer, testified that, based on the quantity of the controlled substances seized and the gram scale, combined with the normal dosage and use by a simple drug user, it was his expert opinion appellant possessed the methamphetamine with the specific intent to sell at least some of it. Panov buttressed McClintock's expert opinion with his own long-time experience with methamphetamine users and sellers. "It is well-settled that '. . . experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld.' [Citations.]" (*People v. Parra* (1999) 70 Cal.App.4th 222, 227.) Moreover, it is also well settled that the testimony of a single witness is sufficient to support a conviction so long as it is not

9

physically impossible or inherently improbable. (*People v. Ghobrial* (2018) 5 Cal.5th 250, 281; see Evid. Code, § 411; CALCRIM No. 301.)

Appellant argues the absence of traditional drug dealers' accoutrements such as "pay-owe" sheets, cell phones, or cash is more indicative of simple possession and not possession for sale. However, the absence or presence of any or all these, some anachronistic, indicia of possession for sale is not dispositive, and defendant points us to no authority to the contrary. Rather, in methamphetamine possession cases, experienced officers may give their opinion the drugs are held for purposes of sale based solely "upon such matters as the quantity, packaging, and normal use of an individual[.]" (*People v. Harris* (2000) 83 Cal.App.4th 371, 375.) "Thereafter, it is for the jury to credit such opinion or reject it." (*Ibid.*) So too here.

The two officers' testimony in this matter, including McClintock's expert opinion and the underlying facts upon which it was based, provides substantial evidence from which a jury could reasonably find appellant possessed the methamphetamine for sale. The fact appellant testified differently does not affect this conclusion because it is for the jury, not the reviewing court, to assess the credibility of the witnesses and make the ultimate determination of whom to believe. (*People v. Dowl* (2013) 57 Cal.4th 1079, 1092 ["To be sure, defendant offered explanations for some of [the] circumstances, but the jurors did not have to believe them"].) And because the verdict is supported by substantial evidence, we may not reverse "'simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.]" (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 162.)

*Sentencing Issues*

*Aggravated Terms and the Consecutive Sentence on Count 3*

Appellant next contends the trial court failed to adequately articulate its reasons for imposing upper term sentences on the assault charge and its use enhancement, as well as for its decision to impose a consecutive subordinate term for possessing

10

methamphetamine while armed. The claims were forfeited and – forfeiture notwithstanding – are meritless.

At the sentencing hearing, the trial court began the discussion by addressing whether appellant should receive a probationary grant, and defense counsel argued at length for such a suspended sentence. [4] The court ultimately rejected counsel's entreaties in this regard, and stated its "tentative decision" was "to deny probation." The court then went through its reasons and concluded it "will not grant probation." Appellant does not challenge this decision.

Moving on to the actual sentence, the trial court first observed that, "'Under established authority, the same fact may be used to both deny probation and to support the imposition of an upper term sentence.'" It then listed those circumstances and facts which led it to impose upper term sentences on the assault charge and its enhancement: "The court has selected the upper term for the following reasons: This was an extremely dangerous situation which easily could have resulted in the death of another. [¶] . . . The simple changing of almost a fine degree of angle in regard to the barrel of the weapon up against the head of the victim could have resulted in a much [more] serious event."

For the upper term on the gun use enhancement, the court stated it was "impos[ing] the upper term of ten years" based on "the exhibit and the testimony received at trial." Appellant argues the court's reference to the "exhibit and the testimony" is prejudicially unclear. We disagree. The court had earlier found one of the factors in aggravation to be that appellant "used a weapon during the commission as illustrated by [Kelsey S.'] wounds depicted in one of the *exhibits* and the defendant's own *testimony* and admission during [*sic*] the probation report." (Italics added.) In other words, the trial court found as an aggravating factor the fact appellant not only used the firearm to strike

---

4        Defense counsel's sentencing brief exclusively focused on his request for a grant of probation.

11

Kelsey's head with it, but he also used it in such a way as to cause additional injury when the gun discharged, intentionally or not, and she was actually struck by the bullet.

As for consecutive sentences, the court relied on California Rules of Court, rule 4.425 (rule 4.425), and pointed out there were two discrete sets of crimes here, separated in time, and the "crimes and their objectives were predominantly independent of each other." (See rule 4.425, subd. (a)(1).) [5] Similarly, as for the possession of methamphetamine while armed conviction, the court specifically imposed its consecutive subordinate midterm sentence based on "the large quantity of methamphetamine" involved, a factor not prohibited by rule 4.425, subdivision (b). [6]

Having thus outlined its "indicated" sentence, the trial court then specifically asked defense counsel, "Does the defense wish to be heard as to any of the factors, sentencing choices, or application of 654?" Counsel replied, "No, your honor. I said what I had to say before the court imposed sentence." Counsel misspoke, however, because the sentence had not yet been imposed. Indeed, the court then stated, "Thank you. Then the court's *tentative* sentence now becomes the court's final sentence," and the court then proceeded to address the additional terms and conditions of the sentence. (Italics added.) Simply put, appellant was specifically invited to address the same aspects of his sentence – upper terms, consecutive sentences, and section 654 – that he now raises on appeal. But he did not.

*Forfeiture*

"[A] trial court is required to state its reasons for any sentencing choice (e.g., imposition of an upper term) on the record at the time of sentencing." (*People v.*

---

[5] Rule 4.425 sets forth a nonexclusive list of factors a court may consider in its decision to impose consecutive sentence. They include whether the crimes and their objectives were predominantly independent of each other; whether the crimes involved separate acts of violence or threats of violence; and whether the crimes were committed at different times and places. (Rule 4.425, subd. (a).)

[6] "Any circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, except: [¶] (1) A fact used to impose the upper term; [¶] (2) A fact used to otherwise enhance the defendant's sentence in prison or county jail under section 1170(h); and [¶] (3) A fact that is an element of the crime may not be used to impose consecutive sentences." (Rule 4.425, subd. (b).)

*Ortiz* (2012) 208 Cal.App.4th 1354, 1371; see § 1170, subd. (c); Cal. Rules of Court, rule 4.420, subd. (e).) However, in *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*), our Supreme Court held "that complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*Id.* at p. 356 and p. 352, fn. 15 [cases cited]; see *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100 (*Sperling*) ["'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial,' [Citation.]," quoting *People v. Gonzalez* (2003) 31 Cal.4th 745, 751 (*Gonzalez*)].)

Here, appellant was invited to and given a full opportunity to object to any perceived deficiencies in the court's sentencing calculus and chose not to. Instead, appellant's sole focus was on whether the circumstances justified a probationary grant, which the trial court considered and denied.

Indeed, the court specifically asked, "Does the defense wish to be heard as to any of the factors, sentencing choices, or application of 654?" And the answer was, "No." Thus, appellant was given a "meaningful opportunity" to object when the sentence was imposed but did not. (*Gonzalez, supra,* 31 Cal.4th at p. 752; see also *People v. Boyce* (2014) 59 Cal.4th 672, 731 (*Boyce*) [defendant forfeited claim that trial court had given no reasons for imposing consecutive sentences because court "adjourned after asking counsel if there was anything else to discuss," and "[a]t no time did defense counsel lodge his objections to the imposition of consecutive sentences"]; cf. *Sperling, supra,* 12 Cal.App.5th at pp. 1101-1102 [for purposes of forfeiture rule, defense counsel had meaningful opportunity to object, as counsel remained silent when trial court invited comment on sentence].)

"It is only if the trial court fails to give the parties any meaningful opportunity to object that the *Scott* rule becomes inapplicable." (*Gonzalez, supra,* 31 Cal.4th at p. 752.) Under *Scott,* therefore, appellant's failure to object to the trial court's

13

discretionary sentencing choices obviates his claims of sentencing error on appeal, and his complaint about the trial court's alleged failure to adequately articulate its choices for upper terms and consecutive subordinate terms is therefore forfeited. (See *Boyce, supra,* 59 Cal.4h at p. 731 ["Accordingly, under the settled precedent in *Scott,* the claim is forfeited on appeal"].)

Appellant seeks to avoid forfeiture by claiming he did in fact object to the court's sentencing choices. However, the record is otherwise. Trial counsel did file a "Defendant's Sentencing Brief" before the sentencing hearing, and in it he did entitle a section "Argument re: Mitigated Sentence." (Capitalization omitted.) Even so, as discussed, his argument for "mitigation" was specifically couched as a request that "the court sentence him to probation in light of the fact that [appellant] has the support of his close friends and family members, and in acknowledgement of his minimal criminal history." [7] He did not argue for mitigated or midterm prison sentences, and did not address either the prosecutor's sentencing arguments or the court's indicated choices for aggravated terms or consecutive sentences, let alone object to them. Furthermore, his arguments were made *before* the court indicated its sentencing rationale. This cannot be reasonably construed as an objection to the way in which the court weighed the competing sentencing factors. [8] And even assuming his request for probation could somehow be considered an objection, it was insufficient. A "defendant's objections regarding claimed sentencing mistakes must be sufficiently specific and meaningful to allow the trial court to correct the errors ……. [T]he sentencing judge has no obligation, when faced with an omnibus objection, to inquire further in an effort to ferret out the

---

[7]    Arguably, appellant did "object" to the trial court's denial of probation. But we need not and do not address the propriety of the order denying probation because, as noted, appellant does not challenge that discretionary decision on appeal.

[8]    Appellant also argues against forfeiture by stating we are "not prohibited from reaching a question not properly preserved for review." Perhaps, but the two cases he cites in support are inapposite because neither involved application of the *Scott* forfeiture doctrine. In any event, we decline to do so under these circumstances because doing so would essentially render the *Scott* rule nugatory.

basis for the objection as it may exist in the mind of defense counsel." (*People v. de Soto* (1997) 54 Cal.App.4th 1, 4.)

*The Claims Also Fail on the Merits*

Even if the issues were not forfeited, we would not find error. "A trial court's sentencing decision is subject to review for abuse of discretion." (*People v. Hicks* (2017) 17 Cal.App.5th 496, 512.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citations.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

As for the upper term sentences, the trial court found several aggravating circumstances: appellant was armed with a loaded firearm; the drug crimes involved a large amount of contraband; appellant engaged in violent conduct indicating a serious danger to society by discharging a gun in an enclosed space with several people nearby; appellant had prior adult convictions and they were of increasing seriousness; he had a history of gang membership and a long history of drug abuse; there was an indication the sexual orientation of Kelsey and Mia was a motivating factor; and appellant admitted the dangerousness of his conduct. The court chose to impose the upper term on the assault based on the single aggravating factor that this was an extremely dangerous situation that could have resulted in death. As for the upper term on the use enhancement, the court

found as a fact that appellant not only used the firearm by striking Kelsey with it, but also caused an additional injury when the gun discharged, thus supporting an upper term.

"'Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in qualitative as well as quantitative terms.' [Citation.] One factor alone may warrant imposition of the upper term [citation] and the trial court need not state reasons for minimizing or disregarding circumstances in mitigation [citation]." (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401.) Appellant has failed to show the court abused its discretion either by imposing upper terms on both the assault charge and the use enhancement or by failing to articulate its reasons for doing so.

Regarding the consecutive sentences imposed for the March 11 offenses, the trial court found two of the three rule 4.425 factors supported the decision to impose a consecutive sentence on count 3: the possession of methamphetamine while armed occurred four days after the assault, and its objectives were predominantly independent from the assault. Moreover, the court demonstrated it was aware of and mentioned the limitations of rule 4.425, subdivision (b), and still "cho[se] to sentence the defendant consecutively." Again, appellant has not shown an abuse of discretion as to the consecutive sentence on count 3 or the court's rationale for imposing it.

*Section 654 and Count 6*

Finally, appellant contends the trial court erred by imposing a consecutive sentence for his conviction for being a felon in possession of a firearm, and not staying that sentence under section 654. This claim is well-taken. [9]

Initially, we note that despite appellant's failure to object to this part of his sentence below, the claim is not forfeited; there are exceptions to the *Scott* rule. (*Id.,* 9 Cal.4th at p. 354.) One such exception is when a sentence is legally unauthorized. (See

---

[9]   The Attorney General agrees. In fact, both the prosecutor and defense counsel below stated section 654 applied to this count in their sentencing brief calculations of appellant's maximum exposure.

16

*People v. Ruiz* (2018) 4 Cal.5th 1100, 1104, fn. 2 ["unauthorized" sentence claim may be raised for the first time on appeal]; *Scott, supra,* 9 Cal.4th at p. 354 [a "narrow exception" to the forfeiture rule].)

"A sentence is said to be unauthorized if it cannot 'lawfully be imposed under any circumstance in the particular case' [citation], and therefore is reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court.' [Citations.] An obvious legal error at sentencing that is 'correctable without referring to factual findings in the record or remanding for further findings' is not subject to forfeiture." (*In re Sheena K.* (2007) 40 Cal.4th 875, 887.)  Specifically, the *Scott* rule is inapplicable to section 654 errors. (*Scott, supra,* 9 Cal.4th at p. 354, fn. 17 ["It is well settled, for example, that the court acts in 'excess of its jurisdiction' and imposes an 'unauthorized' sentence when it erroneously stays or fails to stay execution of a sentence under section 654"].)

At the time of appellant's sentencing, section 654 provided: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).) [10]

Section 654 "precludes multiple punishment for a single act or omission, or an indivisible course of conduct" (*People v. Deloza* (1998) 18 Cal.4th 585, 591 (*Deloza*), and ensures a defendant's punishment will be commensurate with his or her criminal culpability.  (*People v. Kramer* (2002) 29 Cal.4th 720, 723).  Thus, if a defendant suffers

---

[10]     In 2021, the Legislature amended section 654 and removed the language regarding the court's obligation to impose the "longest potential term of imprisonment," and trial courts thereafter have the discretion to impose any of the potential sentences affected by section 654 before staying the remainder.  (See Stats. 2021, ch. 441, § 1, eff. Jan. 1, 2022.) We need not address whether the amendment retroactively applies to the direct appeal in the current case because under the facts of this case and the sentences that were imposed, it would not act to mitigate appellant's potential punishment. (Cf. *In re Estrada* (1965) 63 Cal.2d 740, 746.) Moreover, because we are remanding the matter for resentencing, a hearing that will occur after the amendment's effective date, the trial court will have the discretion to apply amended section 654 at that time if it chooses to.

more than one conviction, and punishment for one is barred by section 654, "that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed." (*Deloza, supra,* at p. 592.)

"The starting point of a Section 654 analysis is to determine whether the 'different crimes were completed by a "single physical act."'" [Citations.] 'If so, the defendant may not be punished more than once for that act,' regardless of the defendant's intent and objective. [Citation.] 'Only if we conclude that the case involves more than a single act – i.e., a course of conduct – do we then consider whether that course of conduct reflects a single "'intent and objective'" or multiple intents and objectives.' [Citations.] 'Whether a defendant will be found to have committed a single physical act for purposes of [S]ection 654 depends on whether some action the defendant is charged with having taken separately completes the actus reus for each of the relevant criminal offenses.' [Citation.]" (*People v. Washington* (2021) 61 Cal.App.5th 776, 795 (*Washington*).)

"When the facts are undisputed, the application of Section 654 raises a question of law we review de novo. [Citation.] We review any factual findings underlying the trial court's ruling for substantial evidence." (*Washington, supra,* 61 Cal.App.5th at p. 795.)

Here the facts are undisputed. And although the trial court could lawfully impose a sentence for appellant's felon in possession conviction, it could not have lawfully imposed it without staying it under section 654. Appellant was convicted of two crimes, both of which arose out of the same act: the possession of a firearm on March 11. [11] That simple act of possession violated two distinct statutes, but only because appellant was both a convicted felon and in possession of methamphetamine at the time he committed the *act*. Thus, although the circumstances surrounding the convictions are distinct – his status as a previously convicted felon and of being in possession of

[11] As discussed, appellant's firearm assault on Kelsey S. took place on a different date, although the prosecutor did not charge him with being a felon in possession of a firearm on that date.

18

methamphetamine – there is but one act of possession, at the same place and at the same time. (See *People v. Corpening* (2016) 2 Cal.5th 307, 316 [when a single physical act serves as the basis for convicting the defendant of two separate crimes, we need "not reach step two of the section 654 analysis: whether the forceful taking involved multiple intents and objectives"].)

In concluding section 654 did not apply, the trial court relied on *People v. Vang* (2010) 184 Cal.App.4th 912 and *People v. Harrison* (1969) 1 Cal.App.3d [12] 115.However, both those cases were decided before *People v. Jones* (2012) 54 Cal.4th 350,360 (*Jones*), in which our Supreme Court held that possession of controlled substances while armed and the possession of a firearm by a felon were the same act, and therefore were subject to section 654's prohibition against multiple punishment for a single act. (*Id.* at p. 360.) Moreover, in *Jones,* the court directly disapproved *Harrison* and, perforce, "*Vang* is no longer good law." (*Washington, supra,* 61 Cal.App.5th at p. 799.) [13]

Thus, appellant's "single possession . . . of a single firearm on a single occasion may be punished only once under section 654." (*Jones, supra*, 54 Cal.4th at p. 357.) And as a result, under the version of section 654 then-controlling, [14] because possession of a controlled substance while armed carries a greater penalty (2, 3, or 4 years) than felon in possession of a firearm (16 mos., 2, or 3 years), the subordinate term of eight months on the latter conviction should have been imposed and stayed. Appellant's sentence on count 6 must therefore be reversed.

---

[12] "Under the authority of *People versus Yang* [*sic*], [citation], which references *People versus Harrison* [citation], the court . . . does not find that 654 applies."

[13] The trial court reasoned section 654 should not apply because the two offenses "address distinct dangers . . . felons possessing firearms and the extra danger of mixing narcotics and a loaded accessible firearm." This is a reasonable analysis, but it has been elsewhere rejected and we agree with its rejection. The rationale that multiple punishments are "appropriate where a single act is punishable under multiple statutes directed at distinct evils . . . cannot survive *Jones.*" (*People v. Chung* (2015) 237 Cal.App.4th 462, 471; cf. *People v. Mesa* (2012) 54 Cal.4th 191, 199 [multiple objectives may justify multiple punishment when the defendant's crimes involve multiple acts, but not when the defendant's crimes are based upon a single act or omission].)

[14] See footnote 10, *ante.*

But that is not the end of the story; we may not simply stay the sentence imposed on count 6 and order the trial court to prepare an amended abstract of judgment. Under the "full resentencing rule," our Supreme Court has held "that when *part* of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' [Citations.]" (*People v. Buycks* (2018) 5 Cal.5th 857, 893 (italics added); accord, *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425; see *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1259 ["upon remand for resentencing after the reversal of one or more subordinate counts of a felony conviction, the trial court has jurisdiction to modify every aspect of the defendant's sentence on the counts that were affirmed, including the term imposed as the principal term"].)

Because the trial court imposed a concurrent sentence on the possession of methamphetamine for sale conviction, and stayed it pursuant to section 654, remand for resentencing is necessary since the court retains discretion to consider restructuring different sentences on that count, the possession of methamphetamine while armed count, and the felon in possession count. Therefore, "[w]e remand the matter to the trial court so that it may exercise its sentencing discretion anew, if and to the extent the court deems resentencing appropriate. We express no opinion concerning whether or how the court should exercise its sentencing discretion on remand," in light of our conclusions regarding the original sentence and section 654. (*People v. Cruz* (2020) 46 Cal.App.5th 715, 739.)

DISPOSITION

Appellant's sentence is reversed, and the matter is remanded to the trial court with directions to resentence appellant to a term no greater than his original

20

sentence.  Following resentencing, the court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


                                                        BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


ZELON, J.*


*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.